IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:14CR300 |
| | ) | |
| DERRON MCRAE SIMON, M.D. | ) | Honorable Leonie M. Brinkema |
| | ) | |
| Defendant | ) | Sentencing Hearing: March 6, 2015 |

**<u>GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING</u>**

The United States of America, by and through its attorneys, Dana Boente, United States Attorney for the Eastern District of Virginia, and Jennifer A. Clarke, Special Assistant United States Attorneys, in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, Guidelines Manual ("U.S.S.G." or the "Guidelines") § 6A1.2, files this Position of the United States With Respect to Sentencing of the defendant, Derron McRae Simon (Simon). The Government believes that a sentence of incarceration within the properly calculated Guidelines range of 235 – 293 months would be sufficient, and not greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a). The government does not seek a fine in this matter.

**I.    FACTUAL BACKGROUND**

On October 1, 2014, the defendant pleaded guilty to one count of conspiracy to distribute and dispense, and to possess with intent to distribute and dispense, controlled substances, in violation of Title 21, United States Code, §§ 841(a)(1) and 846 and one count of distribution of oxycodone to a person under twenty-one years of age, in violation of Title 21, United States Code, Section 859(a). The defendant was a medical doctor and the leader of an oxycodone distribution conspiracy who wrote and sold hundreds of prescriptions for at least 11,000

-1-

oxycodone pills and other controlled substances that were not for a legitimate medical purpose and were beyond the bounds of medical practice.

Simon had previously been a licensed medical doctor, however, in 2008, he was placed on probation by the Virginia Board of Medicine. While on probation, Simon operated a wellness clinic, WithinMe MD. During this time period, Simon became involved with the fraudulent distribution of oxycodone. The drug distribution conspiracy began on or about February 2013, continued through on or about September of 2014, and consisted of three sections, with Simon at the center. Through the facilitation of co-defendant and co-worker Ereida Escobar, Simon met Santos Romero, a street-level dealer. Through Romero, Simon was able to access a group of young adults, most of whom were drug addicts, to further the goals of the conspiracy. Simon wrote oxycodone prescriptions in the names of many of Romero's associates, provided those prescriptions either to the individual directly or to Romero so that Romero could fill the prescriptions and then distribute the oxycodone for profit. Romero directed other charged and uncharged co-conspirators, some of whom were under 21 years of age, to fill fraudulent oxycodone prescriptions written by Simon in these other associates' own names. Romero then directed these individuals to return some of the pills so Romero could then sell the oxycodone for profit, or allowed the individuals to keep a portion of the pills either for personal use or for further re-distribution. None of these individuals were legitimate medical patients of Simon.

Simon also distributed oxycodone through the facilitation of his cousin and co-defendant Donald Petties. Simon wrote fraudulent oxycodone prescriptions in the names of many individuals, including Petties's children and mother, and Petties filled the prescriptions and distributed the pills for their profit. All three of Petties's children live in Canada, and none of the children were aware that their father and Simon had stolen their biographical information in

order to obtain additional quantities of oxycodone, until the FBI contacted Petties's children after his arrest. Simon knew that Petties did not have the consent of Petties's children to use their biographical information. Simon and Petties also coordinated the sale of oxycodone pills that Petties filled to a distant relative in the Midwest who then returned to the Midwest for further distribution.

Simon further conspired with a girlfriend, M.F., to distribute oxycodone. Initially, Simon wrote prescriptions for various non-narcotic medication for M.F.'s friends. Eventually, Simon began using the information provided by M.F. and M.F.'s information to write fraudulent prescriptions that M.F. filled at pharmacies. Simon thus abused his relationship with his girlfriend, M.F., to increase the revenue his narcotics distribution conspiracy generated.

## II. STANDARDS GOVERNING SENTENCING

The standards governing sentencing are well-established. In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, and emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. Id. at 264; see also United States v. Kimbrough, 552 U.S. 85 (2007) (stating that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence"). In Gall v. United States, 552 U.S. 38, 128 S. Ct. 586 (2007), the Supreme Court instructed that the sentencing court should calculate the sentencing Guidelines range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. Id. at 596-97. The Gall Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of

the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id. (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence." United States v. Simmons, 269 Fed. Appx. 272, 2008 WL 681764, at *1 (4th Cir. March 11, 2008) (citing United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007)). When "rendering a sentence, the district court must make and place on the record an individualized assessment based on the particular facts of the case." United States v. Cuthrell, No. 12-4077, 2012 WL 3643677, *1 (4th Cir. Aug. 27, 2012) (citing United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009)). Ultimately, the court "must state in open court the particular reasons supporting its chosen sentence." Carter, 564 F.3d at 328 (quoting 18 U.S.C. § 3553(c)). Courts "are not left with unguided and unbounded sentencing discretion." United States v. Green, 436 F.3d 449, 455 (4th Cir. 2006). Instead, at sentencing a court "must first calculate the Guidelines range." Nelson v. United States, 555 U.S. 350, 351 (2009); see also United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005) (holding that a sentencing court is still required to "'consult [the] Guidelines and take them into account when sentencing'" (quoting Booker, 543 U.S. at 264)).

### III.   THE APPROPRIATE GUIDELINES RANGE

<u>The Presentence Report</u>

The defendant's base offense level was determined by the probation officer to be 38 pursuant to U.S.S.G. §§ 2D1.1(c)(5) and 2D1.2(a)(2). By agreement, the defendant qualifies for the following enhancements: (1) the defendant is leader or organizer of a criminal activity that involved five or more participants, pursuant to Section 3B1.1 of the Sentencing Guidelines, (2) the defendant abused his position of trust, pursuant to Section 3B1.3 of the Sentencing Guidelines and (3) that the defendant used friendship or affection to involve another in the conspiracy who was unaware of the scope and was provided limited compensation, pursuant to Section 2D1.1 of the Sentencing Guidelines.  The government agrees with the probation office's calculation of the base offense level and adjusted offense level of 38. The defendant has no criminal history, therefore, the Guidelines range is 235 - 293 months.

The defendant noted his objection to the probation officer's withholding of the three-level reduction for acceptance of responsibility pursuant to 3E1.1 of the Sentencing Guidelines. The probation officer declined to apply the 3-point reduction for acceptance of responsibility because Simon continued to engage in the criminal conduct after he had been released on bond, despite the fact that Simon later entered a timely plea of guilty and admitted his conduct.  A defendant who enters a guilty plea is not entitled to an acceptance of responsibility adjustment as a matter of right.  See <u>United States v. Duggar</u>, 435 F. 3d 236 at 239 (4th Cir. 2007). It is the defendant's burden to prove by a preponderance of the evidence that he has not only recognized but affirmatively accepted responsibility for his criminal conduct.  <u>Id</u>. When making this determination, a court may consider the defendant's actions after his arrest and while awaiting trial. <u>Id</u>.  In <u>Duggar</u>, the defendant was indicted for distribution of cocaine base, and while incarcerated, became involved with the distribution of marijuana and pills. <u>Id</u>. at 238.  Although

-5-

Duggar entered a plea of guilty and truthfully admitted his conduct, he was denied the reduction for acceptance of responsibility due to his continuation of criminal activity while incarcerated. Id. at 240. In this case, Simon was indicted in September 2014 for a litany of charges arising out of his fraudulent distribution of oxycodone pills. After being released on bond, Simon continued to not only practice medicine after having permanently forfeited his medical license, but committed the very same crime for which he was indicted, namely, the unauthorized and fraudulent distribution of narcotics. Furthermore, to write the narcotics prescriptions while on bond, Simon used, without her authorization, the DEA number of a nurse practitioner with whom he had previously worked, and sold these narcotics prescriptions for profit. Simon's post-arrest behavior is inconsistent with true contrition deserving of a reduction for acceptance of responsibility.

The statutory maximum for conspiracy to distribute and dispense, and conspiracy to possess with intent to distribute and dispense, controlled substances is 20 years imprisonment. 21 U.S.C. §§ 841(a)(1) and 846. The statutory maximum for distribution of a controlled substance to a person under 21 years of age is 40 years imprisonment. 21 U.S.C. §§ 841(a)(1) and 859.

## IV. THE 18 U.S.C. SECTION 3553(A) FACTORS

Title 18, United States Code, Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in Section 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C). After calculating the appropriate Guidelines range, "the court must 'determine whether a sentence

within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" United States v. Moreland, 437 F.3d 424, 432 (4th Cir. 2006) (quoting Green, 436 F.3d at 455). Section 3553(a) directs the sentencing court to consider various factors, including the nature and circumstances of the offense and characteristics of the defendant. Applying these sentencing factors to this case demonstrates that a sentence within the Guidelines range is appropriate and reasonable.

The trafficking of the highly addictive and dangerous narcotic oxycodone and other drugs imposes enormous costs on individuals, families, and the community, including the costs associated with law enforcement, corrections, medical treatment, and substance abuse treatment. Oxycodone distribution is a serious crime and a period of incarceration within the Guidelines range is necessary, in particular given the aggravated nature of the defendant's involvement in this conspiracy. Because Simon was a medical doctor, Simon had a responsibility unlike almost any other defendant charged with a similar offense. Not only was Simon more than willing to shirk his professional obligations and flaunt the trust accorded a medical doctor, but he took advantage of every opportunity he could to sell additional pills. Also, because of his education, Simon had detailed scientific knowledge of the addictive properties of oxycodone and the destructive effects this dangerous narcotic has on the human brain. This knowledge did not stop Simon from selling oxycodone to young individuals. Simon abused this position of trust and engaged in narcotics distribution that not only did not improve the health of individuals, but that in fact potentially ruined the lives of many people.

In flagrant contravention of his obligation to uphold certain ethical standards, Simon was directly responsible for the introduction of over 11,000 highly addictive oxycodone pills in to the supply in northern Virginia and elsewhere. It is difficult to quantify the negative impact that

11,000 oxycodone pills had on the people of northern Virginia that purchased these drugs, their families, and their communities. But given the highly addictive nature of oxycodone, and the vast quantity that was put on the street because of Simon's actions, there is no doubt that many lives have been adversely affected.

Although Simon had lost his ability to practice medicine independently, he still nevertheless had opportunities afforded by his extensive education that are unavailable to many other defendants charged with similar crimes. Even being indicted on federal drug distribution charges was not enough to stop Simon from continuing to distribute narcotics. Simon's intentional decision to abuse his position of trust out of pure greed, knowing that the narcotics he sold would destroy the lives of the young people who abused the drugs, justifies a substantial prison sentence.

A sentence within the Guidelines range is appropriate and necessary to impress upon the defendant the seriousness of the offense and to deter him and others, particularly those who have a medical or pharmaceutical background, from distributing oxycodone in the future.

## CONCLUSION

For the reasons above, the Government believes that a sentence of incarceration within the Guidelines range would be sufficient, and not greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Dana J. Boente
United States Attorney

By: _____/s/_____
Jennifer A. Clarke
Special Assistant United States Attorney (LT)
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Email: jennifer.clarke@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 27, 2015, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic copy to the defendant's counsel of record:

      In addition, I hereby certify that on February 27, 2015, I emailed a copy of the foregoing to:

    Nina S. Blanchard
    Senior United States Probation Officer
    10500 Battleview Parkway
    Suite 100 Manassas, VA 20109 703 366-2139
    Nina_Blanchard@vaep.uscourts.gov

                                  Respectfully submitted,

                                  Dana J. Boente
                                  United States Attorney

                By:      /s/
                                  Jennifer A. Clarke
                                  Special Assistant United States Attorney (LT)
                                  Eastern District of Virginia
                                  United States Attorney's Office
                                  2100 Jamieson Avenue
                                  Alexandria, Virginia 22314
                                  Phone: (703) 299-3700
                                  Email: jennifer.clarke@usdoj.gov